UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 3:19-CV-48-CHB

ALI AL-MAQABLH,                                                                    PETITIONER,

v.                                      **<u>RECOMMENDED DISPOSITION</u>**

BOBBY TEMPLE, *et al.*,                                                          RESPONDENT.

*** *** *** *** ***

There are several pending matters before this Court. Petitioner Ali Al-Maqablh is a former inmate at the Carroll County Jail. On September 6, 2019, Al-Maqablh was released from custody after he completed a short sentence. Proceeding *pro se*, he filed a petitioan for a writ of habeas corpus by a person in state custody on July 9, 2019. [R. 1]. Shortly after, Al-Maqablh also filed a motion for preliminary injunction. [R. 8]. Finally, Respondent Andy Beshear moved to be dismissed from this action as an improperly joined party. [R. 21].

The issues being fully briefed are now ripe for review. For the following reasons, the Court RECOMMENDS that Al-Maqablh's § 2254 Petition be DENIED on Grounds 1-5 and 7 as procedurally defaulted, DENIED on Ground 6 as meritless, and DISMISSED WITH PREJUDICE. Furthermore, this Court RECOMMENDS that Al-Maqablh's motion for a preliminary injunction be DENIED and Respondent's motion to dismiss be DENIED.

## I.        FACTS AND PROCEDURAL HISTORY

Al-Maqablh is a former inmate at the Carroll County Jail where he served a misdemeanor sentence for false reporting and harassment. The underlying actions of this case stem from custodial disputes between biological parents Al-Maqablh and Lindsey Jo Alley regarding their minor child.

While Al-Maqablh and Alley were once cordial, their relationship soon deteriorated, leading to the disputes surrounding Al-Maqablh's habeas petition. Following their breakup, Al-Maqablh was granted visitation rights with his son while Alley was granted custody. A disagreement soon transpired relating to Al-Maqablh's desire to change his son's name due to his religious beliefs. Alley disagreed that the name change would be in their son's best interest and the Trimble Circuit Court agreed. Al-Maqablh appealed to the Kentucky Court of Appeals and sought discretionary review from the Kentucky Supreme Court, which affirmed the lower court's decision. [R. 17-2 at 136-42].

On March 25, 2016, Al-Maqablh and Alley argued over visitation of their son on Easter Sunday, leading Al-Maqablh to make threats of calling the police if Alley did not comply. The next day, after Alley did not comply with his request, Al-Maqablh called the Kentucky State Police ("KSP") alleging that Alley was in violation of his visitation rights and stated that she may have injured their child. The child was found uninjured and celebrating Easter with Alley's family. On April 2, 2016, Al-Maqablh made another report to the Cabinet of Health and Family Services ("CHFS"), alleging again that Alley injured their child. CHFS similarly found that the child was uninjured. Alley then filed a criminal complaint against Al-Maqablh, alleging harassment and false reporting. [R. 17-2 at 143]. While these charges were pending, Al-Maqablh reported to Child Protective Services ("CPS") that he had more concerns that their son was injured. CPS again found that the child was not injured. Alley then filed a second criminal complaint for false reporting. [R. 1-1].

Al-Maqablh was charged with two counts of filing a false report and one count of harassment in the Trimble District Court. On November 2, 2017, following the district court's denial of his motion for a directed verdict of acquittal, the jury returned verdicts finding that Al-Maqablh was

guilty of harassment and filing false reports on March 26, 2016 to April 2, 2016 and on May 16, 2016. Al-Maqablh was then sentenced to 180 days imprisonment, 60 days to be served, 120 days to be conditionally discharged for 2 years, and assessed a $1,256 fine. On appeal to the Trimble Circuit Court, Al-Maqablh raised only the following issues: (1) he was legally required to report suspected child abuse; (2) reports of child abuses are entitled to protected immunity; (3) there was no proof of the elements of harassment that he intended to alarm or annoy; and (4) the United States Constitution prohibits the government from selectively enforcing statutes against minorities. [R. 17-2 at 150-61]. The Trimble Circuit Court upheld the District Court's decision. He then sought discretionary review from the Kentucky Court of Appeals and the Kentucky Supreme Court, but it was denied.

On July 9, 2019, Al-Maqablh timely filed the instant action pursuant to 28 U.S.C. § 2254, raising the following seven claims:

1.  Denial of procedural due process because the Kentucky courts did not "hold fair hearings and fair trials" [R. 1 at p. 23];

2.  Denial of Equal Protection because the Kentucky courts "act[ed] in a way that deprive[d] individuals of certain ethnic and religious backgrounds of liberty" [R. 1 at p. 24];

3.  Kentucky Revised Statute 519.040 is void for vagueness [R. 1 at p. 24];

4.  Al-Maqablh's convictions violated the Sixth Amendment because the Kentucky courts held "that venue is proper where the effect of an alleged false statement is felt" [R. 1 at p. 25];

5.  The Commonwealth violated Al-Maqablh's right to a speedy trial [R. 1 at p. 25];

6.  The Commonwealth violated Al-Maqablh's rights "under Article III" by failing to direct a verdict of acquittal and by failing to hold that the question of immunity was not a

question of law [R. 1 at p. 26];

7.   The punishments imposed were excessive under the Eighth Amendment [R. 1 at p. 26].

Without notice to the Respondents, Al-Maqablh also filed for writ of certiorari on November 1, 2019, arguing that: (1) the state court's opinion criminalizes the intent of Congress; (2) the state court's opinion invites constitutional infraction and endangers protected rights; (3) certiorari will clarify whether denying immunity extended under CAPTA is appealable as an exception to the collateral order doctrine; and (4) certiorari will fortify the rights of individuals who report suspected child abuse against retaliatory conduct by aggrieved parties. [R. 25-1]. Certiorari was denied on Al-Maqablh's petition. [R. 26-1]. The Respondents argue that: (1) Grounds 1-5 and 7 are procedurally defaulted; and (2) Ground 6 does not establish that the Trimble Circuit Court's rulings were contrary to clearly established federal law, an unreasonable application of federal law, or an unreasonable determination of facts. [*Id.*]

## II.    STANDARD OF REVIEW

This Court is required to review Al-Maqablh's request for habeas corpus relief pursuant to the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows state prisoners to seek federal habeas corpus relief on the ground that they are being held in custody in violation of the Constitution, law, or treaties of the United States. 28 U.S.C. § 2254(a); *Reed v. Farley*, 512 U.S. 339, 347 (1994). The AEDPA states:

An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C § 2254(d)(1)-(2). However, the AEDPA's demanding standard only applies with respect to claims that were adjudicated on the merits in state court. Thus, before addressing the merits of any claim in this habeas proceeding, the Court must first find that certain procedural prerequisites are present. The requirement of giving state courts the first opportunity to cure a constitutional claim, stems from the understanding that state courts are obligated to follow federal law and from the desire for comity between the state and federal court systems. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999).

## III.    ANALYSIS

### A.  Procedural Prerequisites: Procedural Default on Grounds 1-5 and 7

Before reviewing the merits of a habeas petition, a court should consider any applicable procedural-bar issue which would preclude consideration of claims on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 524 (1997). In this case, Respondents correctly argue that six of Al-Maqablh's seven habeas claims are procedurally defaulted. [R. 17].

"Procedural default is a threshold rule that a court generally considers before reviewing the applicable law and available remedies in a habeas petition." *Lovins v. Parker*, 712 F.3d 283, 294 (6th Cir. 2013). A habeas petitioner procedurally defaults on a federal constitution claim in the state courts if he or she fails to comply with an independent and adequate state procedural rule and is thereby barred in federal courts from reviewing his federal claim. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). This occurs when a petition fails to properly raise a claim in state court or fails to pursue it through the state's ordinary appellate review procedures. *Williams v. Mitchell*, 792 F.3d 606, 613

(6th Cir. 2015). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." In other words, procedural default is established when:

> (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

*Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010).

First, Respondents argue that Grounds 1, 4, 5, and 7 are procedurally defaulted because Al-Maqablh failed to raise the issues in the Kentucky state courts. [R. 17 at p. 11]. Second, Respondents argue that Grounds 2 and 3 are procedurally defaulted because Al-Maqablh raised the issues for the first time on appeal without properly preserving them in the district court. [R. 17 at 13-14]. Al-Maqablh argues that he presented all the issues raised in his petition to the Circuit Court either directly or indirectly. [R. 24 at 273]. Al-Maqablh also unnecessarily criticizes the Respondents for relying on the doctrine of procedural default and argues that the rules for appeals "are non-traditional and ill-defined by the rules." [*Id.*]

For the adequate and independent state ground doctrine to apply, the state procedural requirement in question must be "firmly established and regularly followed." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). The procedural default doctrine standard applies alike whether the default in question occurred at trial, on appeal, or on state collateral attack. In Kentucky, any issue that could be raised on direct appeal must be raised. *St. Clair v. Commonwealth*, 451 S.W.3d 597, 613 (Ky. 2014); *see also Hampton v. Commonwealth*, 133 S.W.3d 438, 444 (Ky. 2004) (stating "a litigant may not raise on a subsequent appeal any question that could have been raised as well as those that were raised upon a former appeal"). Otherwise, the claims are procedurally barred if they are not raised on

direct appeal. *St. Clair*, 451 S.W.3d at 613.

Al-Maqablh failed to comply with Kentucky's procedural rules for Grounds 1-5 and 7 and the remedy for these grounds are no longer available to exhaust. [R. 1 at p.23-26]. Contrary to Al-Maqablh's criticisms of procedural default, it has "long been the law in Kentucky," and has been "applied consistently" to bar review of claims that should have been presented on direct appeal. *Leonard v. Commonwealth*, 279 S.W.3d 151, 156 (Ky. 2009). Since Kentucky's procedural rule is "firmly established and regularly followed," Al-Maqablh failed to carry his burden of proving that he presented any of the six claims to the state court for adjudication. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) (stating that claims that have not been previously presented to the state courts for adjudication are not properly exhausted and cannot serve as a formidable challenge in federal habeas petitions). Therefore, since Al-Maqablh does not show that the procedural default rule is not firmly established, this Court will next consider whether the six claims are procedurally defaulted.

First, the record reflects that Grounds 1, 4, 5, and 7 were never properly raised below. In Ground 1, Al-Maqablh alleges that he was deprived of procedural due process. [R. 1 at p. 23]. In Ground 4, Al-Maqablh alleges that his Sixth Amendment right was violated because the criminal complaint failed to establish the element of venue. [R. 1 at p. 25]. In Ground 5, Al-Maqablh alleges that his Sixth Amendment right to a speedy trial was violated. [*Id.*] Finally, Ground 7 alleges that his Eighth Amendment right was violated as excessive punishments. [R. 1 at p. 26]. In his brief to the Trimble Circuit Court, Al-Maqablh raised the following four issues: (1) he was legally required to report suspected child abuse; (2) reports of child abuses are entitled to protected immunity; (3) there was no proof of the elements of harassment that he intended to alarm or annoy; and (4) the United States Constitution prohibits the government from selectively enforcing statutes against minorities.

**7** of **22**

[R. 17-2 at 150-61]. This shows that the state court was not given the opportunity to address any potential issues of due process, the Sixth Amendment, or the Eighth Amendment. *See. Mitchell*, 792 F.3d at 613 (holding "[s]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"). Consequently, there does not appear to be any other remedy available in the Kentucky state courts due to Al-Maqablh's failure to preserve or bring these claims on direct appeal. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) (stating that claims that have not been previously presented to the state courts for adjudication are not properly exhausted and cannot serve as a formidable challenge in federal habeas petitions). Therefore, since there is no indication that Al-Maqablh properly preserved these issues for appeal, Grounds 1, 4, 5, and 7 are procedurally defaulted.

Second, while Grounds 2 and 3 were raised on appeal, Al-Maqablh failed to properly preserve them for consideration of the appellate court. *See Commonwealth v. Bell*, 473 S.W.2d 820 (Ky. 1971) (holding that proper objections must be made known to the trial court if the appellate intends to preserve the matters to be considered by reviewing courts). In Ground 2, Al-Maqablh argues a violation of Equal Protection due to selective enforcement of the law based off his national and ethnic origin. [R. 1 at p. 24]. Although this issue was presented to the Trimble Circuit Court, it held that Al-Maqablh's allegation of selectively enforcing statutes against minorities was "not reviewable since it was never raised until now" and because "there is no evidence at all that could support it." [R. 17-2 at 172]. This Court is bound by the state court's findings that Al-Maqablh did not properly preserve this issue below. *See Mathews v. Ishee*, 486 F.3d 883, 890 (6th Cir. 2007) (holding that a state court's conclusion that the petition did not exercise reasonable diligence in discovering evidence constitutes a procedural bar). Absent a ruling by the trial court, appellate courts are unable to review alleged

errors. *Todd v. Commonwealth*, 716 S.W.2d 242 (Ky. 1986). Therefore, Ground 2 is procedurally defaulted.

For similar reasons, Al-Maqablh's allegations of KRS § 519.040 being void for vagueness are procedurally defaulted because he did not raise this issue at trial, but instead raised the issue for the first time on his second appeal to the Kentucky Court of Appeals for discretionary review. [R. 17-2 at 177]. Again, a Kentucky appellate court cannot consider an issue raised for the first time on discretionary review. *See Combs v. Knott Cnty Fiscal Court*, 141 S.W.2d 859, 860 (Ky. 1940). Therefore, Ground 3 is similarly procedurally defaulted.

A petitioner who had the opportunity to raise constitutional issues in a state postconviction proceeding but failed to do so has waived those claims for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice from the alleged constitutional error or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case. *See Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Al-Maqablh makes no showing under either.

"Cause" ordinarily turns on whether the prisoner can show that "some objective factor external to the defense" impeded his efforts to comply with the State's procedural rule. *Coleman*, 501 U.S. at 753. "[O]nly where a prisoner is impeded or obstructed in complying with the State's procedures will a federal habeas court excuse the prisoner from the usual sanction of default." *Martinez v. Ryan*, 566 U.S. 1, 13 (2012). Besides cause, the petitioner must also show that he was prejudiced as a result of the claimed constitutional error. *United States v. Frady*, 456 U.S. 152, 168 (1982). The prejudice analysis means the petitioner must show "actual prejudice" resulting from the errors of which the petitioner complains. *Id.* This requirement is not that the petitioner is merely

required to show that the alleged trial error created a possibility of prejudice, but rather, that the alleged errors "worked to his actual and substantial disadvantage, infecting the trial with error of constitutional dimensions." *Id.* at 170. "Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

The record neither indicates that Al-Maqablh was obstructed from complying with Kentucky's procedures, nor does Al-Maqablh establish prejudice to overcome procedural default. To show cause, Al-Maqablh argues conclusively that the nature of the appeal and extenuating circumstances justified any procedural default. [R. 24 at 279]. Specifically, he argues that even if he would have appealed the issues, he would not have won because of political reasons. [R. 24 at 281]. As evidence, he points to the Trimble Circuit Court's decision denying his appeal as evidence of bias against him. [R. 24 at 281]. This mere assertion does not demonstrate an objective factor external to the defense that impeded Al-Maqablh's efforts to comply with the state procedural rule. *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006). Even assuming this bias existed, that did not impede him from presenting the issues to the appellate courts to consider before bringing his habeas petition. Therefore, this Court need not address any alleged issue of prejudice, as Al-Maqablh does not present sufficient evidence to meet the cause standard.

Finally, even if a petitioner fails to show actual cause and prejudice, he may be excused of his procedural default in extraordinary situations if he can show that "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. This showing requires the petitioner to present a "colorable showing of factual innocence" based off new and reliable evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually

innocent. *McCleskey v. Zant*, 499 U.S. 467 (1991). It cannot be said from the facts presented that a fundamental miscarriage of justice occurred because the evidence considered by the jury show reasonable proof of threatening text messages sent to Alley and confirmed false statements made to state officials. Al-Maqablh's contentions of factual innocence and allegations of issues that arose with his former lawyer are not well-developed. [R. 24 at 286-87]. Contrary to his argument, the evidence he reiterates does nothing to show that a constitutional violation has probably resulted in a conviction of someone who is actually innocent. *Zant*, 499 U.S. at 467. Therefore, Al-Maqablh does not meet his burden to show a fundamental miscarriage of justice.

In sum, Al-Maqablh procedurally defaulted on Grounds 1-5 and 7 because he either did not give the state court the opportunity to address the potential error below, or he did not properly present the issues to the state appellate courts. Although Al-Maqablh addressed the issues of cause, prejudice, and miscarriage of justice in his reply, he cannot meet the applicable requirements for each. Therefore, under the doctrine of procedural default, six of Al-Maqablh's seven claims are precluded from review of this Court and are recommended to be denied.

### B. Ground 6: Trial Judge's Denial of the Directed Verdict is not Contrary to or an Unreasonable Application of Established Federal Law

Following the procedural bar of his other claims, Al-Maqablh argues only one possible claim of error that was properly exhausted in state court: that the state trial judge erred in refusing to grant him a directed verdict of acquittal to the charges and erred in holding the question of immunity is not a question of law for the court to consider. [R. 1 at 26]. However, after reviewing the records, the undersigned finds that the Trimble Circuit Court's sufficiency determination was not contrary to established law or an objectively unreasonable application of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d)(2).

Pursuant to the standards established under the AEDPA, Congress recognized the foundational principle that "[s]tate courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19, 20 (2013). Accordingly, Congress has limited the availability of federal habeas relief "with respect to any claim" the state courts "adjudicated on the merits." 28 U.S.C. § 2254(d). This means for this Court to grant Al-Maqablh's Petition, he must establish the Trimble Circuit Court based its decision on either a "contrary" or an "unreasonable application" of Federal law, or the decision was "based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A state court adjudication is "contrary to" United Supreme Court precedent under 28 U.S.C. § 2254(d)(1) if the state court "arrives at a conclusion opposite to that reached by the [Supreme Court] on a question of law or if the state court decides a case differently than the [Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court adjudication is an "unreasonable" application of Federal law pursuant to § 2254(d)(1) if the state court "identifies the correct governing legal principal . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Where "[n]o precedent of [the Supreme Court] clearly forecloses" a state court's ruling, it simply cannot be an unreasonable application of Supreme Court precedent. *Woods v. Etherton*, 136 S.Ct. 1149, 1152 (per curiam). A federal habeas court may not grant relief simply by concluding that the relevant state court decision applied clearly established federal law erroneously or incorrectly; the "application must also be unreasonable." *Id.* at 411. In other words, an unreasonable application of clearly established federal law occurs when the challenged state-court ruling rested on "an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013).

Under § 2254(d)(2), the "unreasonable determination" clause, "a state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt*, 571 U.S. at 18. The petitioner's burden is made even heavier by the fact that a federal court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181. The question for the court is "not whether a federal court believes the state court's determination was incorrect but whether the determination was unreasonable—a substantially higher burden." *Schriro v. Langrigan*, 550 U.S. 465, 473 (2007).

Federal courts do not analyze a petitioner's claim *de novo* under § 2254. Rather, a state court's factual determinations "are presumed correct absent clear and convincing evidence to the contrary." § 2254(e)(1). The Court must give complete deference to evidence-supported state court findings of fact pursuant to the presumption of correctness. 28 U.S.C. § 2254(e)(1). A state court decision, adjudicated on the merits based on a factual determination, will not be overturned on factual grounds unless objectively unreasonable considering the evidence presented in the state-court proceeding. § 2254(d)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Thus, "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Nevada v. Jackson*, 569 U.S. 505, 508 (2013) (per curiam) (internal quotation marks omitted). "[C]ircuit precedent does not constitute clearly established federal law" under the AEDPA. *Parker v. Matthews*, 567 U.S. 37, 48 (2012). Therefore, § 2254 creates "a highly deferential standard for evaluating state-court rulings," and demands that "state-court decisions be given the benefit of the doubt." *Davis Lafler*, 658 F.3d 525, 530 (6th Cir. 2011). Section 2254 has essentially erected a

"formidable barrier" to federal habeas relief for those prisoners whose claims were fully adjudicated in state court, requiring they show that the state court's ruling "was so lacking in justification that there was an error . . . beyond any possibility for fair-minded disagreement." *Titlow*, 571 U.S. at 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Section 2254 relief is grounded in the rationale that federal habeas review exists only to ensure that individuals are not unconstitutionally imprisoned; therefore, it is intended to cure only serious constitutional errors, not merely to correct errors of fact or to relitigate state adjudications. *See Herrera v. Collins*, 506 U.S. 390, 401 (stating "Federal courts are not forums in which to re-litigate state trials").

The crux of Al-Maqablh's argument is that he had immunity from the harassment and false reporting charges pursuant to KRS § 620.050 because the evidence of the Commonwealth was insufficient to meet its burden. [R. 1]. As his claim was adjudicated on the merits in state court, under the ADEPA the Court must now determine whether the ruling was contrary to or an unreasonable application of any clearly established federal law. Al-Maqablh's argument is predicated on his belief that the trial court violated his right to due process when it denied his motion for a directed verdict on his harassment and false reporting charges. [R. 1]. The standard for a directed verdict of acquittal under Kentucky law is as follows:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). The Commonwealth need not "rule out every hypothesis except guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 326

**14** of **22**

(1979).

On September 12, 2016, Al-Maqablh moved for a directed verdict to dismiss the harassment and false reporting charges arguing that he is immune from the charges because he is mandated to make reports of potential child abuse under KRS § 620.030(1). [R. 1-3]. The Trimble District Court held that it was satisfied with the allegations contained in the complaint to allow the Commonwealth to proceed. [R. 1-4]. The district court reasoned that pursuant to *Commonwealth v. Bishop*, 245 S.W.3d 733, 735 (Ky. 2008), the trial judge is not permitted to weigh the sufficiency of the evidence prior to trial or "summarily dismiss indictments in criminal cases" unless the judge perceives the criminal statute is unconstitutional, there is evidence of prosecutorial misconduct, there is a defect in the grand jury proceedings, the indictment is facially insufficient, or there is a lack of jurisdiction by the court. [*Id.*] (Internal quotations omitted). The district court then directed Al-Maqablh that the proper time to evaluate the sufficiency of the evidence was at the conclusion of the Commonwealth's proof. [*Id.*]

Al-Maqablh tendered the transcript from trial where he moved for a directed verdict at the conclusion of the Commonwealth's case-in-chief on November 2, 2017. [R. 1-5]. The trial judge again denied Al-Maqablh's motion, stating that it was satisfied with the Commonwealth's proof that Al-Maqablh was not immune because there was sufficient evidence of harassment and false reporting. [R. 1-5 at p. 3]. The trial judge relied on the Commonwealth's explanation that the harassment charge occurred with Al-Maqablh's threatening text messages that he would call KSP if Alley did not allow their son to be with him on Easter and the evidence of false reporting where no injuries were found on their child after multiple reports. [*Id.*] Consequently, the trial court found that there was sufficient evidence that the jury could find beyond a reasonable doubt that Al-Maqablh was guilty of harassment

and false reporting. Thereafter, the jury found Al-Maqablh guilty of the charged offenses and he appealed his case to the Trimble Circuit Court. On appeal, the circuit court upheld the district court's decision not to grant a directed verdict because the trial judge was not permitted to weigh the evidence and no exception under *Bishop* applied. [R. 17-2 at 170]. The Kentucky Court of Appeals and Kentucky Supreme Court declined to grant discretionary review.

This analysis presents a reasonable application of clearly established federal law. As relied on by the trial court, the directed verdict standard is controlled by *Benham*, and this standard aligns with the requirements set out by the Supreme Court of the United States in *Jackson*, which is the standard for the sufficiency of the evidence claims under the Due Process Clause. *See Beaumont v. Commonwealth*, 295 S.W.3d 60, 67 (Ky. 2009) (holding that the *Jackson* standard is "reflective in our familiar *Benham* standard of review for denial of a directed verdict). In order to obtain habeas relief:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . We hold that [a criminal defendant] is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

*Jackson*, at 319, 324. "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear on the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.'" *Cavazos v. Smith*, 565 U.S. 1, 5 (2011) (quoting *Jackson*, 443 U.S. at 319).

Here, pursuant to *Jackson* and *Benham*, the Trimble Circuit Court reasonably analyzed the evidence presented against Al-Maqablh and sensibly concluded that the district court did not error in overruling his motions for directed verdict regarding his harassment and false reporting charges. The

circuit court correctly relied on the district court's conclusion that Al-Maqablh was not entitled to immunity under KRS § 620.010(1) because the evidence from the complaint and in court suggests that his actions did not occur in good faith. Since no exception applied under *Bishop*, it was not for the trial court to weigh the evidence of harassment and false reporting. This means Al-Maqablh failed to establish the Trimble Circuit Court based its decision on either a "contrary" or an "unreasonable application" of Federal law, or the decision was "based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Therefore, Ground 6 in Al-Maqablh's petition is recommended to be denied.

### C.  Motion for an Evidentiary Hearing

In addition to his § 2254 Petition, Al-Maqablh requested an evidentiary hearing. [R. 24]. Respondent contends that an evidentiary hearing is not necessary in this case because the issues are easily resolved by the reference to the state court record. [R. 17 at p. 17]. Although he requests an evidentiary hearing, Al-Maqablh also concedes that the facts of this case adequately support his habeas petition. [R. 24 at 282].

28 U.S.C. § 2254(e)(2) permits a district court to conduct an evidentiary hearing so the petitioner may rebut the presumption of correctness of a state court's factual findings or to support a claim on which the state court has not made any pertinent factual findings. Pursuant to Habeas Rule 8(a), "[i]f the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." A determination of a factual issue by a state court shall be presumed correct, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). According to the AEDPA, if the petitioner failed to develop the factual basis of a claim in the state

court proceedings, and the claims are not procedurally defaulted, then the court "shall not" hold an evidentiary hearing unless the claim (1) relies on a new, retroactive rule of constitutional law; or (2) relies on a factual predicate that could not have previously been discovered despite the exercise of due diligence; and (3) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2). Thus, when a state court has not adjudicated a habeas petitioner's constitutional claims on the merits, the AEDPA severely restricts the capacity of a federal habeas court to conduct a hearing to develop the evidence relating to the claim.

To the extent the Court must evaluate for an evidentiary hearing under Habeas Rule 8(a), the Court perceives no need for one as to this petition, which conclusively shows that Al-Maqablh is presently entitled to no relief. 28 U.S.C. § 2254(e)(2); *Williams v. Taylor*, 120 S.Ct. 1479, 1488-91 (2000); *Stanford v. Parker*, 266 F.3d 442, 459-60 (6th Cir. 2001) (holding that evidentiary hearings are not required under § 2254 when "the petitioner's claims are either barred from review or without merit"). "An evidentiary hearing is required unless 'the record conclusively shows that the petitioner is entitled to no relief.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). As discussed above, six of Al-Maqablh's seven claims are procedurally defaulted and his only remaining claim is without merit. Moreover, Al-Maqablh does not establish that any of the six grounds asserted are "factual predicate[s] that could not have previously been discovered despite the exercise of due diligence," and "would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

Therefore, it is recommended that Al-Maqablh's request for an evidentiary hearing be denied.

### D. Motion for Preliminary Injunction

Al-Maqablh also seeks to enjoin the Respondents from revoking his work release and subjecting him to further arbitrary prosecution before the Trimble District Court. [R. 8]. Under appropriate circumstances, an individual in custody of the state may petition the federal habeas court for injunctive relief. *Allen v. Campbell*, 194 F.3d 1311 (6th Cir. 1999). Absent the threat of "great and immediate" irreparable injury, federal courts should not interfere with pending state criminal proceedings. *Younger v. Harris*, 401 U.S. 37, 46 (1971).

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). In deciding whether the circumstances demand a preliminary injunction, the Court must "weigh carefully the interests of both sides." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975). According to the Sixth Circuit, courts are directed to consider the following four-factors: (1) whether there is a strong or substantial likelihood of success on the merits; (2) whether an injunction is necessary to prevent irreparable harm to the plaintiff; (3) whether granting the injunction will cause harm to others, including the defendant; and (4) whether the public interest favors granting the injunction. *Int'l Longshoremen's Ass'n v. Norfolk Southern Corp.*, 927 F.2d 900, 903 (6th Cir. 1991). The factors are not prerequisites, and they need not be given equal weight, but they are factors to be balanced against each other. *In re Eagle-Pitcher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992). The plaintiff bears the

burden of proving that an injunction is proper. *Overstreet*, 305 F.3d at 573.

Respondents argue that Al-Maqablh cannot meet any of the four factors courts are directed to consider before granting injunctive relief. [R. 10 at 78]. First, as this Court determined above, Al-Maqablh fails to show a strong or substantial likelihood of success with respect to his claim that Respondents violated his federal rights. Second, there is no evidence that Al-Maqablh suffered irreparable injury merely because he has lost jobs due to the state's prosecution of his case. Al-Maqablh does not have a constitutional right to employment, nor does he show that he will be permanently affected from prospective job prospects. Thus, absent a constitutional deprivation, there is no irreparable harm. *See Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (noting that the underlying purpose for a preliminary injunction is lost if there is no irreparable harm). As for the risk of harm to others and the public interest, the Court simply notes that it must proceed with utmost care when a prisoner asks to enjoin state officials. *See Kendrick v. Bland*, 740 F.2d 432, 438 (6th Cir. 1984). Because judicial interference is necessarily disruptive, the public's interest would not be served, and it could very well be harmed by the relief Al-Maqablh seeks. *See Clay v. Isard*, 2010 WL 565121, at *2 (W.D. Mich. Feb. 10, 2009) (citing *Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988) (stating that the public welfare militates against the issuance of extraordinary relief in the prison context, absent a showing of a violation of constitutional rights)). No showing of a violation of a constitutional right has been made here. Therefore, since this Court finds that all four factors weigh against granting Al-Maqablh's motion, it is recommended that his motion for a preliminary injunction be denied.

### E.  Motion to Dismiss Respondent Andy Beshear as Improperly Joined

Respondent Andy Beshear moves to be dismissed as a party to this action arguing that he does

not have custody of Al-Maqablh. [R. 21]. Beshear acknowledges that Al-Maqablh's habeas petition

is not moot because he may face revocation of his probation due to the conditions of his probation.

[R. 21 at 231]; *see also Maleng v. Cook*, 490 U.S. 488 (1989). However, Beshear argues that as

Attorney General of Kentucky, he does not have the power to give Al-Maqablh the relief he seeks.

[R. 21 at 231]. Rule 2(b) of the Rules Governing Section 2254 cases provides:

> If the petition is not yet in custody—but may be subject to future custody—under the
> state-court judgment being contested, the petition must name as respondents both the
> officer who has current custody *and the attorney general of the state where the
> judgment was entered*. The petition must ask for relief from the state-court judgment
> being contested.

(Emphasis added). When Al-Maqablh filed his habeas petition, Beshear was the acting Attorney

General. Consequently, Al-Maqablh correctly named him as a respondent because he is subject to

potential future custody. Therefore, it is recommended that Beshear's motion to dismiss him as an

improperly joined party should be denied.

## IV.    RECOMMENDATION

Having reviewed the current petition in accordance with Rule 10 of the Rules Governing

Section 2254 Habeas Cases, IT IS RECOMMENDED that:

(1)    Grounds 1-5 and 7 be DENIED for procedural default;

(2)    Ground 6 be DENIED as meritless;

(3)    Al-Maqablh's motion for an evidentiary hearing be DENIED;

(4)    Al-Maqablh's habeas petition [R. 1] be DISMISSED WITH PREJUDICE;

(5)    Al-Maqablh's motion for a preliminary injunction [R. 8] be DENIED; and

(6)    Respondent Andy Beshear's motion to dismiss [R. 21] be DENIED.

\*\*\*\*\*

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed with the Clerk of the Court within fourteen days of the date of service or further appeal is waived. FED. R. CIV. P. 72(b)(2); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of written and specific objections. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are not sufficient to preserve the right of appeal. *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991). A party may respond to another party's objections within fourteen days of being served with a copy of those objections. FED. R. CIV. P. 72(b)(2).

Signed January 23, 2020.



Signed By:
*Edward B. Atkins*
United States Magistrate Judge