UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

|  |  |  |
|---|---|---|
| ALI AL-MAQABLH, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3:19-CV-048-CHB |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER ON OBJECTIONS TO** |
| JOHN CARTER, et. al., | ) | **MAGISTRATE JUDGE'S** |
| | ) | **RECOMMENDED DISPOSITION** |
| Respondents. | ) | |

*** *** *** ***

This matter is before the Court on Petitioner Ali Al-Maqablh's Objections to Magistrate

Judge Edward B. Atkins's Recommended Disposition. [R. 28]  For the reasons laid out below,

the Court will adopt the Magistrate Judge Recommended Disposition [R. 27] and overrule

Petitioner's Objections.

I.    **Background Facts[1]**

On November 2, 2017, Petitioner Ali Al-Maqablh ("Petitioner" or "Al-Maqablh") was

convicted by a jury of harassment and two counts of falsely reporting an incident in Trimble

District Court. [R. 1-6 p. 4]  These charges stemmed from visitation disputes between

Petitioner and the mother of his child, Lindsay Alley ("Alley"), and accusations of child abuse.

Alley had custody of their son and Al-Maqablh had visitation rights. [R. 18 VR: 11/02/2017,

10:14:15–10:14:20; 2:50:45–2:51:30]  On March 25, 2016, Petitioner and Alley had an

argument about whether Petitioner had visitation rights on March 27, Easter Sunday. [*Id.*

---

[1] In his Objections, Petitioner claims that Respondent has submitted a "fraudulent" record. [R. 28 p. 2]  However, the videos he submitted are identical to Respondent's video (Petitioner did submit additional videos from pre and post-trial hearings). [R. 29]  Petitioner also at one point claims that Respondent's video copy of the record was unplayable [R. 28 p. 10], yet cites specific minute marks in his briefing. *See, e.g.*, [R. 24 p. 18]  Petitioner also extensively cites the trial court record in his Objections, indicating he was able to access the trial record. [R. 28

10:17:00–10:27:45] Alley claimed that Petitioner's legal day was Saturday and told Petitioner that she would not let him have their child on Easter Sunday because she wanted their child to spend Easter with her family. [*Id.*] Petitioner told Alley if she did not give him visitation on Sunday she could "expect the police to be visiting your family's house on that day." [*Id.* 10:17:45–10:28:50] Petitioner made good on this threat. On March 27, 2016, Easter Sunday, Petitioner called the Kentucky State Police and told an officer that Alley was wrongfully withholding their son from him. [*Id.* 12:02:40–12:03:45] He also told the officer that every time Alley withheld their son from him the child was injured. [*Id.*] Petitioner asked the officer to perform a wellness check on the child and inspect him for injuries. [*Id.* 12:13:50–12:14:10] When the officer arrived to see the child, he found nothing wrong; the family was hunting for Easter eggs and the child was uninjured. [*Id.* 12:05:55–12:06:30; 12:26:55–12:27:35]

On March 31, 2016, the child stayed with Petitioner overnight. [*Id.* 10:19:00–10:21:00] Petitioner gave the child back to Alley the next day, but threatened to call Child Protective Services (CPS). [*Id.*] On April 2, 2016, Petitioner had another scheduled visitation. [*Id.*] However, Petitioner did not show up to the agreed meeting spot to receive the child. [*Id.*] Petitioner told Alley via text that she needed to take their son to CPS before he agreed to take him, but he took the child later that day. [*Id.*] After Alley returned home, a CPS employee and police officer came to her house and informed her that they were investigating a report of potential child abuse. [*Id.*] It turns out, Petitioner had filed a report with CPS that morning. [*Id.* 2:03:45–2:04:10] The report stated that "reporting source saw child yesterday [April 1]. Child has a bruise to left eye and on left cheek. Mother says child fell on a stick. Reporting source thinks child was hit . . . reporting source says visitation was withheld during the ten days he did not see the child." [*Id.* 2:04:10–2:04:43] Alley had already told Petitioner about a scratch that

their child had near his left eye that she said he got when he fell in their back yard playing with a stick. [*Id.* 10:21:30–10:24:00] On April 8, 2016, CPS employee Chelsea Clapp took photographs of the child but did not observe any injuries. [*Id.* 2:22:00–2:23:00] Alley filed a criminal complaint against Petitioner alleging harassment and falsely reporting an incident. [R. 17-2 p. 8]

On Thursday, May 12, 2016, with the criminal charges pending, the child stayed with Petitioner overnight. [R. 18 VR: 11/02/2017, 10:31:30–10:32:30] Alley got the child on Friday, and texted Petitioner about whether he would be watching the child on Saturday, May 14. [*Id.*] Petitioner informed Alley that he was forfeiting his visitation that day. [*Id.* 10:32:00–10:32:30; 10:33:30–10:33:40] On Monday, May 16, 2016, Petitioner called Clapp and informed her that Alley had withheld visitation from him that day.[2] [*Id.* 10:32:30–10:32:50; 2:25:40–2:26:30] He told Clapp that every time Alley withheld their son from him it was because their child was injured, and asked her to view his son that day to make sure he was unharmed. [*Id.*] Clapp visited the child and found no injuries. [*Id.* 10:34:00–10:34:20; 2:27:55–2:28:15] Alley filed another criminal complaint for falsely reporting an incident.

On November 2, 2017, Petitioner was tried in Trimble District Court, and the jury convicted him of all three charges: one count of harassment in violation of KRS § 525.070 and two counts of falsely reporting an incident under KRS § 519.040. [R. 1 pp. 5, 14; R. 17-2 pp. 10–14] At the close of the Commonwealth's case, Petitioner moved for a directed verdict based on immunity provided by KRS § 620.030(1), and insufficiency of evidence for the three

_____

[2] The record is unclear as to which day Petitioner claimed he was denied visitation rights. The Cabinet for Health and Family Services' notes from the phone call indicate that Petitioner claimed Alley was withholding visitation "today" (May 16), but also note that he was complaining about her withholding visitation for the next day (May 17). R. 28-1 p. 18. Regardless, the point is not particularly relevant given that the day Petitioner forfeited was May 14.

criminal charges—two charges for falsely reporting an incident under KRS § 519.040 and one charge of harassment under KRS § 525.070. [R. 18, VR: 11/02/17, 02:36:37– 2:44:20][3] The trial court found that there was sufficient evidence that a reasonable jury could find Petitioner guilty of the harassment charge and the two charges of false reporting an incident. [*Id.* 2:42:17– 2:44:20] He also found that there was sufficient evidence to find that Petitioner was not entitled to immunity and held that pursuant to KRS § 620.050(1), anyone who knowingly makes a false report does not qualify for immunity. [*Id.* 2:42:47–2:44:15]

On direct appeal, Petitioner argued that (1) he was legally required to report suspected child abuse; (2) he was entitled to immunity for reporting suspected child abuse; (3) there was no proof of intent to alarm or annoy for his harassment conviction; and (4) selective enforcement of statutes against minorities is prohibited by the United States Constitution. [R. 17-2 pp. 16–26] The Trimble Circuit Court affirmed Petitioner's conviction. [R. 17-2 pp. 35– 37] Petitioner improperly filed a motion to reconsider, which the Trimble Circuit Court also denied. [R. 28-1 pp. 40–41] Petitioner then sought discretionary review in the Kentucky Court of Appeals and the Kentucky Supreme Court, but was denied. [R. 1 p. 3; R. 17 p. 1]

On January 23, 2018, Petitioner was sentenced to 180 days of imprisonment (60 days to serve) and various fines. [*Id.* pp. 10–11] On July 9, 2019, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. [R. 1] As summarized by the Recommended Disposition, Al-Maqablh's petition raises seven "claims," or grounds for why the Court should grant his petition. [R. 27 p. 3; R. 1 pp. 23–26] Petitioner also filed a motion for a preliminary injunction. [R. 8] Respondent Andy Beshear filed a Motion to Dismiss claiming that he was

---

[3] Petitioner has filed an additional copy of the trial video at [R. 29]. The video depicting the jury trial is identical to the one provided by Respondent.

improperly joined. [R. 21]  Magistrate Judge Atkins issued a Recommended Disposition [R. 27], and Petitioner has made various objections. [R. 28]  This matter is ripe for review.

## II.    Standard of Review

Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to the Magistrate Judge's Report and Recommendation or else waive his rights to appeal.  When no objections are made, this Court is not required to "review . . . a magistrate's factual or legal conclusions, under a *de novo* or any other standard . . . ." *Thomas v. Arn*, 474 U.S. 140, 151 (1985).  Parties who fail to object to a magistrate judge's report and recommendation are also barred from appealing a district court's order adopting that report and recommendation. *United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).

For properly-made objections, non-dispositive matters are reviewed under a "limited" standard of review: the district court "must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993); Fed. R. Civ. P. 72(a).  Dispositive matters, however, are reviewed *de novo* if a party makes proper objections. Fed. R. Civ. P. 72(b)(3).  In order to receive *de novo* review by this Court, any objection to the recommended disposition must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (quoting *Smith v. Chater*, 121 F.3d 709, 1997 WL 415309, at *2 (6th Cir. 1997)).  A general objection that fails to identify specific factual or legal issues from the Recommendation, however, is not permitted, since it duplicates the magistrate's efforts and

wastes judicial economy. *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991).

## III.  Discussion

Magistrate Judge Atkins's Recommended Disposition recommended that: (1) grounds 1-5 and 7 of Petitioner's Habeas Petition be denied for procedural default; (2) ground 6 be denied as meritless, (3) Petitioner's motion for an evidentiary hearing be denied; (4) Petitioner's habeas petition be dismissed with prejudice; (5) Petitioner's motion for a preliminary injunction be denied; and (6) Respondent Andy Beshear's Motion to Dismiss be denied. [R. 28 p. 21]  Petitioner objects to the Magistrate Judge's recommendation that ground 4 be denied for procedural default, that ground 6 be denied as meritless, that his motion for an evidentiary hearing be denied, and that his Petition be dismissal with prejudice.

### A.  Non-Objections

Petitioner did not make specific objections to the Magistrate Judge's recommendation that grounds 1, 2, 3, 5, and 7 be denied for procedural default.  In fact, Petitioner failed to reference these grounds other than summarily stating in his conclusion that he "opposes and disagrees with the R&R in recommending that Grounds 1-5 and 7 be denied for procedural default." [R. 28 p. 49][4]  This type of perfunctory objection is precisely what the Sixth Circuit has held is not permitted. *Howard*, 932 F.2d at 509.

Petitioner's objection to the Magistrate Judge's recommendation that his Motion for Preliminary Injunction be denied does not provide a legitimate reason to reject the recommendation.  He does not point to specific errors made by the Magistrate Judge, but rather

_____

[4] Petitioner makes one additional reference to ground 1, where he states in a conclusory fashion that "Grounds 1 and 4 go hand in hand" [R. 28 p. 36 n. 9]  He does not, however, identify specific reasons why he believes the Magistrate Judge erred in recommending that ground 1 be denied for procedural default.

includes a non-cognizable question of state law, a hyperbolic generalization, and an anecdote. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). [R. 28 p. 49]  Finally, Respondent Beshear failed to object to the Magistrate Judge's recommendation that his Motion to Dismiss [R. 21] be denied. [R. 28 p. 21]  Nevertheless, this Court has examined the record and agrees with the Magistrate Judge's well-articulated and detailed reasoning set forth in the Recommended Disposition on these issues.  As such, the Court will adopt the Magistrate's Recommended Disposition in regard to these issues.

### B.    Ground 4

Petitioner objects to the Magistrate Judge's recommendation that his fourth ground, that his rights under Sixth Amendment were violated because of improper venue, be denied for procedural default.[5]  Petitioner argues that he properly presented this ground to the trial court, the Trimble Circuit Court on appeal, and the appellate courts with discretionary review. [R. 28 pp. 35–38]  "[A] petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  To avoid procedural default, a petitioner must exhaust all state-court remedies. *Williams v. Mitchell*, 792 F.3d 606, 613 (6th Cir. 2015).  "If a [petitioner] failed to exhaust his or her state court remedies and state law would no longer permit the petitioner to raise the claim when he or she files a petition for habeas relief in federal

---

[5] Petitioner also attempts to object to the Magistrate's recommendation that ground seven, excessive punishment under the Eighth Amendment, be denied for procedural default. [R. 28 p. 44]  Petitioner's objection is completely non-responsive to the Magistrate Judge's finding of procedural default.  Petitioner fails to show that this claim was raised at any prior state court proceeding and after a review of the record the Court finds that he did not previously raise it and thus the claim is denied for procedural default.

court, the claim is procedurally defaulted." *Carter v. Mitchell*, 693 F.3d 555, 564 (6th Cir. 2012).

Under Kentucky law, any issue that could be raised on direct appeal must be raised or those claims are procedurally barred. *St. Clair v. Commonwealth*, 451 S.W.3d 597, 613 (Ky. 2014); *see also Leonard v. Commonwealth*, 279 S.W.3d 151, 156 (Ky. 2009) (holding that petitioners are procedurally barred from asserting claims that could have been litigated on direct appeal in collateral attacks on a criminal conviction). Federal courts do not have jurisdiction to consider claims in which the "substance" was not "fairly presented" to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). A petitioner must present the factual and legal basis for his claim in order to "fairly present" it to the state court. *McMeans*, 228 F.3d at 681; *see also Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987) ("For a claim to be exhausted, the state court system must have been apprised of the facts and *legal theory* upon which petitioner bases his assertion.") (emphasis in original). Kentucky Rule of Appellate Procedure 72.10(1)(i) requires an appellant to include in their statement of appeal "a concise statement of the legal questions and propositions on which the appellant relies for a reversal of the judgment, with citations of pertinent authority."

Petitioner's appeal does not include such a statement with respect to the issue of venue. In fact, the word "venue" appears in Petitioner's appeal only once, in the statement of the case section's summary of the case's procedural history. [R. 17-2 p. 18] Petitioner's appeal stated that "[p]rior to trial, Ali's attorney, Rob Riley, filed two motions. One for a change of venue which the trial Court denied . . . ." [*Id.*] The appeal continued for nine pages with four specifically identified "arguments" for reversal, none of which included venue. As such, the Circuit Court did not address the argument in its decision. [R. 17-2 pp. 35–37] Petitioner cites

no caselaw to suggest that his throwaway reference to his pre-trial change of venue motion constitutes a fair presentation to the state court for review, likely because none exists. Petitioner's appeal clearly did not include the factual and legal basis for a venue claim and thus did not properly present it to the state court. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

Petitioner next argues that he properly presented the issue of venue in a pro se motion to reconsider that he filed with the Trimble Circuit Court. [R. 28 p. 37 n.10; R. 28-1 pp. 22–36 (labelled "28-9")]  Petitioner requested reconsideration under Kentucky Rule CR 59.05 and a rehearing under CR 76.32. [R. 28-1 pp. 22, 40]  The Circuit Court denied those motions since a Rule 59.05 motion is only appropriately made to the district court and Rule 76.32 only applies to the Kentucky Court of Appeals and the Supreme Court, not intermediate appellate courts such as circuit courts. [R. 28-1 pp. 40–41]  Kentucky law does not allow an appellant to raise new issues beyond the first appeal as long as those issues could have been raised in the first appeal. *St. Clair v. Commonwealth*, 451 S.W.3d 597, 613 (Ky. 2014).  Moreover, the Circuit Court denied Petitioner's motions on independent and adequate grounds under state procedural law. *See Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991) (citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)); [R. 28-1 pp. 40–41].  Both of these reasons are sufficient in their own right to establish procedural default, as Petitioner failed to fairly present the issue of venue to the Trimble Circuit Court.

A petitioner's procedural default may be excused if they can demonstrate cause and actual prejudice from the claimed constitutional error. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  A petitioner can show "cause" if he or she can show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."

*Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see also Martinez v. Ryan*, 566 U.S. 1, 14 (2012). Petitioner has provided no legitimate reason why he failed to comply with Kentucky's procedural rules. Petitioner previously claimed that even if he had included the procedurally defaulted issues in his appeal, the Kentucky appellate courts would have ruled against him for political reasons. [R. 24 pp. 29–31] In his objections, Petitioner claims the Magistrate Judge "failed to acknowledge the prejudices in state courts or excuse and [sic] potential procedural default." [R. 28 p. 39] However, the Magistrate Judge adequately responded to this argument. [R. 27 p. 10] Even accepting Petitioner's conspiratorial speculation as fact, no supposed bias by the appellate court interfered with Petitioner's ability to raise specific claims in his appeal. What Petitioner included in his appeal was his choice, and his choice alone. As such, his post hoc justifications are insufficient.

Petitioner next claims that the fact that he raised his void for vagueness claim, ground 3 in his habeas petition, in a separate civil suit in federal court establishes "cause" for why he could not raise it in his appeal. [R. 28 p. 39] He claims this is because doing so would "create a conflict of opinions." [*Id.*] Unsurprisingly, Petitioner cites no authority to support this claim. If Petitioner is attempting to suggest that the possibility of a federal court invoking *Younger* abstention in his separate § 1983 civil suit provides cause for his procedural default, he is sorely mistaken. A criminal defendant cannot use a civil suit in federal court during an ongoing criminal prosecution in lieu of defending himself in his criminal trial and appeal. Consequently, Petitioner has failed to establish cause for his procedural default.

Finally, a petitioner's procedural default can be excused when a failure to consider his claims would results in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Once a defendant has been convicted for the offenses charged, he loses

the presumption of innocence. This means when he petitions a federal district court for a writ of habeas corpus, he comes before the district court as someone who has been convicted of the charged counts. *Herrera v. Collins*, 506 U.S. 390, 399–400 (1993). The fundamental miscarriage of justice exception does not extend to freestanding claims of actual innocence, but is available "only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence." *Herrera*, 506 U.S. at 404 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). This generally requires showing "new reliable evidence . . . that was not presented at trial." *Terry v. Jackson*, No. 16-4330, 2017 WL 5664915, at *3 (6th Cir. July 17, 2017) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). The reason for such a stringent barrier is obvious: AEDPA was enacted to promote finality of state court judgments, comity between federal and state courts, and respect for state court rules. *Williams v. Taylor*, 529 U.S. 420, 436 (2000).

Al-Maqablh has failed to supplement his claims with such evidence. Petitioner claims that the evidence shows that he is actually innocent because his April 2 report was not false. [R. 1 pp. 8–10] He argues that Alley's admission that their child had a scratch near his eye proves that his report was true. However, his report provided more details that the jury could have interpreted as false. He stated that he thought the child had been hit, despite being told by Alley that the child had simply fallen. [R. 18 VR: 11/02/2017, 10:21:30–10:24:00] He also stated that every time Alley withheld visitation from him this was because the child was hurt. [*Id.* 2:04:10–2:04:43] Al-Maqablh's subjective belief regarding this allegation is obviously impossible to establish with 100% certainty. However, the jury was well within their right to conclude that Petitioner did not actually think the child had been hit and that he was lying about their son being hurt every time Alley withheld visitation from him—making the report false.

## C.    Ground 6

In Petitioner's sixth ground, he argues that the court erred in (1) failing to grant him immunity, and (2) holding that the question of immunity was not a question of law. [R. 1 p. 26][6]  He also claims that the state courts' refusal to grant his motion for a directed verdict violated his "constitutional rights under article III." [*Id.*]  Petitioner repeatedly argues that the state trial court and the Trimble Circuit Court made various errs of state law, such as applying the wrong standard when ruling on his motion for a directed verdict and using the "wrong" state statute to charge him.  Petitioner's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA).  Under AEDPA, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988) ("A federal court is not

---

[6] Petitioner's Sixth ground in full reads:

> 56. Two additional causes warrant this Court's immediate intervention via this petition: (1) Trimble Circuit Court held that a trial court has no constitutional authority to direct a verdict of acquittal even at trial []; and (2) Trimble Circuit Court held that the question of immunity under KRS 620.050 is not a question of law resolved by the court but an abstractive concept resolved by the jury.
> 57. These rights are within the seminal duty of the court under the U.S. Constitution to be an effective instrument to further citizens' rights no deprive them. This case also present constitutional issues in regard to state courts authority under article III, venue and jurisdiction in cases involving reporting child abuse under KRS 620.030 and the appropriate statute to prosecute a person making a report of child abuse.

[R. 1 p. 26]  Respondent and the Magistrate Judge interpreted this ground as a due process claim. [R. 17 pp. 15–19; R. 27 pp. 11–17]  "[A] district court may not create a claim which a party has not spelled out in his pleading." *Kelley v. Burton*, 792 F. App'x 396, 397 (6th Cir. 2020); *see also Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (courts are not required to "conjure allegations on a litigant's behalf").  *At best*, this raises a due process claim for failing to grant a directed verdict.

free to issue a writ of habeas corpus on the basis of a perceived error of state law."). Therefore, any errors of state law are not reviewable by this Court.

Instead, federal courts may only grant a writ of habeas corpus if a petitioner shows that the state's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established *Federal* law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2) (emphasis added). Section 2254(d) was enacted to "guard against extreme malfunctions in the state criminal justice systems, not [as] a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011); *see also Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (habeas was not intended as a "substitute for appeal, nor as a device for reviewing the merits of guilt determinations at criminal trials"); *Herrera v. Collins*, 506 U.S. 390, 401 (1993) ("Federal courts are not the forums to relitigate state trials."). Accordingly, the Magistrate Judge's Recommended Disposition construed this ground as a sufficiency of the evidence claim that violated Petitioner's due process rights under the United States Constitution. [R. 27 p. 14]

A state court decision is an unreasonable application of clearly established federal law only if it is "objectively unreasonable," not if it is merely erroneous or incorrect. *Renico v. Lett*, 559 U.S. 766, 773 (2010). The state court's decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. This is a highly deferential standard and state court rulings are given the benefit of the doubt. *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011). This is a "formidable barrier," as federal courts "will not lightly

conclude that a state's criminal justice system has experienced the type of extreme malfunction for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013). As the Supreme Court made clear, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102.

Under Supreme Court precedent, evidence is sufficient to support a conviction when, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Any factual determinations made by the state court "are presumed correct absent clear and convincing evidence to the contrary." 28 U.S.C. § 2254(e)(1). A federal court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution." *Id.* at 326.

On appeal, Petitioner argued that he should have been given a directed verdict on his harassment charge due to lack of evidence, and on his false reporting charge based on immunity. [R. 17-2 pp. 21–24] The Trimble Circuit Court held that the trial court did not abuse its discretion denying Al-Maqablh's motion for a directed verdict. [R. 17-2 p. 36]. Therefore, the question is whether this application of federal law was so unreasonable and lacking in justification that it warrants habeas relief.

### i.    False Reporting

A person is guilty of falsely reporting an incident when they:

(a) Knowingly causes a false alarm of fire or other emergency to be transmitted to or within any organization, official or volunteer, that deals with emergencies involving danger to life or property; or

(b) Reports to law enforcement authorities an offense or incident within their official concern knowing that it did not occur

(c) Furnishes law enforcement authorities with information allegedly relating to an offense or incident within their official concern when he knows he has no information relating to such offense or incident; or

(d) Knowingly gives false information to any law enforcement officer with intent to implicate another; or

(e) Initiates or circulates a report or warning of an alleged occurrence or impending occurrence of a fire or other emergency under circumstances likely to cause public inconvenience or alarm when he knows the information reported, conveyed or circulated is false or baseless.

KRS § 519.040(1)(d). In his appeal to the Trimble Circuit Court Petitioner argued that he should have been given immunity under KRS § 620.050(1), which provides immunity to anyone acting upon reasonable cause in the making of a report or acting . . . in good faith." However, this immunity does not apply if a person "knowingly makes a false report and does so with malice." KRS § 620.050(1). [R. 17-2 pp. 20–24] Petitioner argued both that there was no evidence regarding his mental state so the Commonwealth had not proved that he did not act in good faith [*Id.* pp. 5–6] and alternatively that there had been no evidence of malice. [*Id.* pp. 6–7] He also raised this argument in his Petition [R. 1 p. 10], and in his Objections. [R. 28 p. 27–29] The Trimble Circuit Court held that "when weighing the evidence, Appellant's current and past conduct/intentions are questionable. Therefore, the trial court did not abuse its discretion and the jury clearly believed that Appellant did not act upon reasonable cause or in good faith." [R. 17-2 p. 36] This ruling is not so unreasonable and lacking in justification that it warrants habeas relief. 28 U.S.C. § 2254(e)(1) (the Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any [] conflicts in favor of the prosecution"). The jury could have determined that this report was not made in good faith given the long history of disputes between Petitioner and Alley. *See, e.g.*, [R. 18 VR: 11/02/2017, 10:18:55–22:10, 10:27:00–29:00] The Trimble Circuit Court was not

unreasonable in holding that the trial court did not abuse its discretion in denying Petitioner's motion for a directed verdict on the basis of immunity.

Petitioner's remaining arguments are not properly before this Court. Petitioner claims that the state court erred in holding that the question of immunity was a question of fact rather than a question of law. [R. 1 p. 26; R. 28 pp. 25–30] Again, this is a non-cognizable question of state law that this Court cannot answer. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Petitioner also raises objections regarding the sufficiency of the evidence to prove various elements of his false reporting charges. [R. 28 pp. 33–35] These arguments were not raised in his state court appeal or even in his own Petition before this Court (or in his Reply). These arguments are both procedurally defaulted and waived. *See Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987) ("For a claim to be exhausted, the state court system must have been apprised of the facts and *legal theory* upon which petitioner bases his assertion."); *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984) ([T]he habeas petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law."). The only legal theory Petitioner "fairly presented" to the Trimble Circuit Court in ground 6 relating to the false reports that could be interpreted as a question of federal law was that the district court erred in denying his directed verdict on the question of immunity. Moreover, these arguments were not presented to the Magistrate Judge, and Petitioner cannot raise new arguments in his objections. *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998) (citing *Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir.1996) ("issues raised for the first time in objections to magistrate judge's report and recommendation are deemed waived")); *see also Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994); *Paterson-Leitch Co., Inc. v. Massachusetts Mun.*

*Wholesale Elec. Co.*, 840 F.2d 985, 990–91 (1st Cir. 1988); *Anna Ready Mix, Inc. v. N.E. Pierson Constr. Co., Inc.*, 747 F. Supp. 1299, 1302–03 (S.D. Ill. 1990).

### ii.    Harassment

With regard to the harassment charge, there was sufficient evidence presented at trial to satisfy the low bar required by federal law. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). KRS § 525.070 provides that:

(1) A person is guilty of harassment when, with intent to intimidate, harass, annoy, or alarm another person, he or she:

(e) Engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.

[R. 17-2 pp. 23–24]  In his state court appeal, Petitioner argued that there was no evidence of any bad intent, that there was no evidence of anyone being seriously annoyed, and there was no evidence of repeated actions. [R. 17-2 pp. 7–8]  The Trimble Circuit Court held that the jury "had the power to determine whether such intent was present." [R. 17-2 p. 36]  Al-Maqablh's Petition does not state how he believes either state court erred.  In his Reply [R. 24 p. 17] and Objections [R. 28 pp. 23–24] Petitioner echoes the arguments made in his state court appeal.

Petitioner's arguments are largely based on a misunderstanding of the standard of review.  Having been convicted by a jury, Petitioner does not come before this Court with the presumption of innocence. *Herrera v. Collins*, 506 U.S. 390, 399 (1993).  Therefore, the question is whether *any* rational trier of fact could have found the elements of harassment satisfied. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This includes triers of fact who see things differently than he does.

First, the jury was perfectly within its right to infer Petitioner's intent just as it did for the false reporting charges. *See, e.g.*, [R. 18 VR: 11/02/2017 10:18:55–22:10, 10:27:00–29:00] Second, there was sufficient evidence for a jury to find that Alley was seriously annoyed.  The

fact that Alley was not present when a police officer showed up, after a conversation with Petitioner, to her family's Easter celebration to perform a wellness check on the child is irrelevant.  The statute says nothing regarding physical presence of the harassee or temporal identity between the actions of the harasser and the serious annoyance of the harassee.  Alley specifically testified that Petitioner's actions made her mother cry, which easily would allow the jury to find that Alley was seriously annoyed. [*Id.* 10:17:40–10:18:05]  Petitioner's argument that he did not seriously annoy Alley because they, at times, continued to have a relationship was clearly rejected by the jury's verdict.  Finally, Alley testified that Petitioner had caused numerous meritless welfare checks on their child, allowing the jury to find that Petitioner had engaged in a repeated course of conduct. [*Id.* 10:20:40–10:21:00]  Therefore, it was not unreasonable to deny Petitioner's motion for a directed verdict on the harassment charge.

### D.  Evidentiary Hearing

Petitioner objects to the Magistrate Judge's recommendation that his request for an evidentiary hearing be denied. [R. 28 pp. 44–48]  Factual determinations made by the state court shall be presumed correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner wrongly claims the Magistrate Judge erred in applying 28 U.S.C. § 2254(e)(2), which allows a district court to conduct an evidentiary hearing under certain circumstances.  Section (e)(2) states:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court ***shall not*** hold an evidentiary hearing on the claim ***unless*** the applicant shows that—
>
> (A)  the claim relies on—
>
> > (i)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii)    a factual predicate that could not have been previously discovered
         through the exercise of due diligence; ***and***

(B)    the facts underlying the claim would be sufficient to establish by clear and
       convincing evidence that but for constitutional error, no reasonable factfinder
       would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (bold emphasis added).  Petitioner claims that by satisfying subsection

(B) he is entitled to an evidentiary hearing.  However the statute clearly requires one of the two

sub-elements of sub-section (A) *and* sub-section (B).  This is evident by the word "and," which

is placed after Section (e)(2)(A)(ii).  Petitioner has not shown that his claim relies on a new rule

of applicable constitutional law or that his claim relies on a factual predicate that could not

have been discovered through the exercise of due diligence, as required by sub-section (A).

Moreover, an evidentiary hearing is not required, and a petition may be summarily

dismissed, "if the record clearly indicates that the petitioner's claims are either barred from

review or without merit." *Sanford v. Parker*, 266 F.3d 442, 459–60.  In this case, the record

clearly indicates that Petitioner procedurally defaulted on six of his seven claims because he

failed to raise these in his state court appeal. [R. 17-2 pp. 15–26]  Moreover, Petitioner's sixth

ground is without merit.  Petitioner's argument that the state courts erred in construing

immunity as a question of fact is an issue of state law that this Court may not address.

Petitioner's sufficiency of the evidence claims regarding immunity and harassment are without

merit given the testimony presented at trial and the low standard required to survive a directed

verdict.

## E.    Dismissal with Prejudice

Petitioner objects to the Magistrate Judge's recommendation that his Petition be

dismissed with prejudice. [R. 28 pp. 48–49]  He argues that "this is simply incorrect especially

in regard to claims of ineffective assistance of counsel." [*Id.* p. 48]  However, Petitioner did not

raise an ineffective assistance of counsel claim in his habeas petition. "[A] district court may not create a claim which a party has not spelled out in his pleading." *Kelley v. Burton*, 792 F. App'x 396, 397 (6th Cir. 2020). Rule 2(C) of the Rule Governing Section 2254 Cases requires that a habeas petition specify all the grounds for relief available to the petitioner and state the facts supporting each ground. This standard is "more demanding" than under the Federal Rules of Civil Procedure. *Kelly*, 792 F. App'x at 397. Al-Maqablh's Petition references ineffective assistance of counsel twice: once in the introduction, and once in numbered paragraph 55. [R. 1 pp. 2, 13] He does not list ineffective assistance of counsel as one of his seven enumerated "counts," or grounds for relief. Moreover, he has not pleaded facts supporting an ineffective assistance of counsel claim as required by Rule 2(C). As Al-Maqablh has not presented the Court with a claim for ineffective assistance of counsel, it expresses no opinion as to the merit of any such claim. *See Kelly*, 792 F. App'x at 397 n.2.

## IV.    Certificate of Appealability

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings for the United States District Courts, the District Court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. The Court may only issue a COA if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "When a district court has rejected a petitioner's claims on the merits . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529, U.S. 473, 484 (2000). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of

the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* In this case, reasonable jurists would not debate the denial of Al-Maqablh's § 2254 petition or conclude that the issues presented deserve to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, a certificate of appealability will not be issued.

## V. Conclusion

After conducting a de novo review of the matters raised by Petitioner's objections, the Court agrees with the Magistrate Judge's Recommended Disposition. The Magistrate Judge's analysis of the issues and application of the law are appropriate, and his recommendations are adopted. Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. The Recommended Disposition **[R. 27]** is **ADOPTED** as the opinion of the Court;

2. Petitioner's Habeas Petition **[R. 1]** is **DISMISSED with prejudice**;

3. Petitioner's request for an evidentiary hearing **[R. 24]** is **DENIED**;

4. Petitioner's Motion for Preliminary Injunctive Relief **[R. 8]** is **DENIED**;

5. Respondent Andy Beshear's Motion to Dismiss **[R. 21]** is **DENIED**;

6. No certificate of appealability will issue;

7. A separate Judgment shall issue contemporaneously with this Order.

This the 26th day of March, 2020.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY